IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,

   vs.

                             Criminal No. 20-221

JORDAN COYNE,
           Defendant.


- - -


Transcript of Sentencing Hearing via Zoom Video
Conferencing, on January 12, 2023, in the United States
District Court, 700 Grant Street, Pittsburgh, Pennsylvania,
15219, before Senior Judge Arthur Schwab.


APPEARANCES:

   For the Government:    U.S. Attorney's Office
                            Jonathan Lusty, Esquire
                            U.S. Courthouse
                            700 Grant Street
                            Pittsburgh, Pennsylvania 15219

   For the Defendant:     DeBernardo, Antoniono, McCabe & Davies
                            William J. McCabe, Esquire
                            11 North Main Street
                            Greensburg, PA  15601


   Court Reporter:        Veronica R. Trettel, RMR, CRR
                            U.S. Courthouse
                            700 Grant Street
                            Suite 5300
                            Pittsburgh, Pennsylvania 15219


Proceedings recorded by mechanical stenography;
transcript produced by computer-aided transcription.

P-R-O-C-E-E-D-I-N-G-S

Thursday Morning, January 12, 2023

THE COURT:  Good morning.  This is the time and place that has been set for sentencing by Zoom video at Criminal No. 21-00221.

I ask counsel for the government to enter your appearance, please.

MR. LUSTY:  Good morning, Your Honor.  May it please the Court, Jonathan Lusty on behalf of the government.

THE COURT:  Welcome.  On behalf of the defendant.

MR. McCABE:  Good morning, Judge.  William McCabe for Jordan Coyne.

THE COURT:  Mr. McCabe, would you identify anyone else that's listening to this call or hearing on behalf of the defendant, please.

MR. McCABE:  Yes, Your Honor.  Jordan's father Mr. Coyne, Bernie Coyne is in the yellow background there, Your Honor, and there are two friends on.  One is Monique. I'm not sure how to pronounce the last name exactly, but it looks like it's Berthiaume.  It's Monique.  Then Jacob Doerr is another friend who wanted to sit in on the proceedings. And someone else just joined, Your Honor, with the letters F-I-I-O-H.  I don't know who that is.  As well as another person just joined.  It looks like it's Brianna Cobb.

THE COURT:  Mr. Coyne, can you identify who those

folks are, please, for the record?

        MR. COYNE:  Yeah, I cannot.

        THE COURT:  Jordan, you are muted.

        THE DEFENDANT:  Brianna Cobb is one of my friends, and then the one that just joined is Wendy Rewalt with the numbers, and then my friend Devon is also joining.  My friend Luke should be joining as well and my sister Abby.

        THE COURT:  Last names, please?

        THE DEFENDANT:  It should be Luke Sanford, Abby Coyne.  I'm not sure what Devon's last name is.  Devon, what is your last name?

        THE COURT:  Before proceeding further, I want to make it clear on the record that recording, whether audio, video or both, photographing, broadcasting or otherwise electronically or digitally captioning the content of any civil or criminal court proceeding is strictly prohibited.

        I ask everybody, except counsel and the defendant, to mute themselves so we don't have any feedback.

        THE DEFENDANT:  And my friend Dominique McDuffie also joined.

        THE COURT:  Spell the last name, please.

        THE DEFENDANT:  M-C-D-U-F-F-I-E.

        THE COURT:  Thank you.

        Mr. Coyne, at any time you wish to speak to your attorney, just please raise your right hand and tell me.

Would you raise your right hand to be sworn, please.

      (The oath was administered to the defendant)

      THE COURT:  Do you understand having been sworn, your answers to my questions are subject to the penalties of perjury or making a false declaration if you do not answer truthfully?

      THE DEFENDANT:  Yes.

      THE COURT:  The Court notes for the record that due to the COVID-19 crisis and related miscellaneous orders entered by Chief Judge Hornak at 20mc00466, counsel for the defendant on March 19, 2022 filed a motion at Docket No. 52 seeking defendant's sentencing hearing to occur by video conference and thereby affirmed that the defendant had waived his right to be physically present at this sentencing hearing. In the interest of justice, the Court granted said motion by order dated March 22nd, 2022 at Docket No. 53.

      Mr. McCabe, is that an accurate summary of the procedural history surrounding your client's request for a video conference sentencing hearing today?

      MR. McCABE:  It is, Your Honor.

      THE COURT:  I would appreciate it if everyone would mute themselves that are on the call because I'm getting feedback.  Thank you very much.  Except for the defendant and counsel.

      Mr. Coyne, is it accurate that you knowingly and

voluntarily waive your right to be physically present at this sentencing hearing today and ask the Court by motion through your counsel to conduct this hearing by video conference?

THE DEFENDANT:  Yes.

THE COURT:  Is it still your intent to proceed by video conference today?

THE DEFENDANT:  Yes.

THE COURT:  So the record is clear, I am physically in the courtroom.  Sir, do you understand that just because you're appearing by video conference, that this sentencing hearing is the same as if you were physically present with me in my courtroom and that your right to be heard in open court remains the same and as you'll be sentenced today just as if you were physically present in the courtroom?

THE DEFENDANT:  Yes.

THE COURT:  Upon due consideration of the written motion filed by the defendant through his counsel on March 19, 2022, to which the government did not object, and the questions to which the defendant has been subjected here today, the Court finds the defendant has knowingly and voluntarily waived his right to be physically present in the courtroom and requests that this Court conduct this sentencing hearing by video conference today.

Therefore, the Court finds that justice so requires that the Court conduct this sentencing hearing today by Zoom

video conference.  The Court will now proceed with the merits of this sentencing hearing.

Sir, on March 22nd, 2022, pursuant to a Rule 11(c)(1)(C) plea agreement, you entered a plea of guilty in this courtroom to one count of a one-count indictment at Criminal Number 20-00221 which charged you with obstruction of law enforcement during a civil disorder, in violation of 18 United States Code, Sections 231(a)(3) and (2).  Correct, sir?

THE DEFENDANT:  Yes.

THE COURT:  And in your plea agreement, sir, you and the government agree pursuant to Rule 11(c)(1)(C) that the appropriate sentence in this case is 18 months to be served concurrent with any sentence imposed by the Court of Common Pleas of Allegheny County, Case Number CP-02-CR-0008195-2020, coupled with 3 years of supervised release, no fine, a special assessment of $100.  Is that correct, sir?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  So for those of you that are on the call supporting Mr. Coyne, I welcome your presence and just want to make it clear to you that this sentence that I will impose today is a sentence that Mr. Coyne and the government have already agreed to.  So that the sentence has been set and I've agreed to follow the agreement between Mr. Coyne and the government.

This Court evaluated and gave due consideration to

your applicable sentencing guidelines range and I accepted the sentence you and the government set forth in the plea agreement at your change of plea hearing.

During your guilty plea, I directed the Probation Office to prepare a Pre-Sentence Investigation Report.  I've reviewed that report and the addendum thereto and the sentencing recommendation of the Probation Office.

Pursuant to the standing order of the Board of Judges of this district, the Court finds it's not appropriate to disclose the recommendation of the Probation Office to the parties, nor to counsel.  However, sir, in determining your sentence, the Court will not consider any matter that's not previously been disclosed to either you or your counsel.

The Court has also reviewed the government's position with respect to sentencing factors indicating it has no objection or requests for modification to the final Pre-Sentence Investigation Report.

The Court has reviewed the defendant's position in which the defendant stated the defendant requested the following additional paragraphs be added to the mental health and emotional health section of the Pre-Sentence Investigation Report.

After his change of plea hearing and as the date of his sentencing approach, Mr. Coyne's mental health condition worsened, culminating in a suicide attempt on June 6th, 2022

for which he was recently hospitalized on June 6th, 2022.  The suicide attempt caused a significant injury to the tendons in his right hand requiring surgery to repair.

On June 13th, 2022, Mr. Coyne sought treatment at Western Psych for his continued deteriorating mental health condition, which resulted in his being admitted into a partial hospitalization program at UPMC Delafield Adult Intense Outpatient Program, and the records of his past and most recent mental health treatment will be attached.

Defense counsel also indicated the position that he would be providing mental health treatment records to the probation officer to be added to the final pretrial -- the final pre-sentence investigation report so that the medical facility at the defendant's FCI would have accurate background information, and I want to thank counsel for getting that information to the Probation Office because it also helps the Bureau of Prisons find the proper facility for the defendant.

The defendant did not otherwise object to or request modification to the final Pre-Sentence Investigation Report. By way of response by addendum, the Probation Office first explained that defense counsel had noted at paragraph 1 of the final Pre-Sentence Investigation Report needed to be corrected to defendant's -- to state defendant's name "Jordan Coyne" and not "Nicholas Lucia."

The probation officer then acknowledged the additions

to the Pre-Sentence Investigation Report, as just detailed by the Court.

Finally, the probation officer responded, "To date, mental health records have not been provided.  However, the Probation Office has no objection to the correction or additional information provided by defense counsel. Furthermore, the Probation Office will forward electronic medical records provided by defense counsel to the Bureau of Prisons upon receipt".

Mr. McCabe, do you agree that the addendum has addressed all concerns raised in defendant's position, none of which affect the advisory guideline calculation in the case?

MR. McCABE:  Yes, Your Honor.

THE COURT:  The Court also has reviewed both the defendant and the government's sentencing memorandum, which address why the sentence of 18 months incarceration is the appropriate sentence for this Court to impose.

Mr. McCabe, have you reviewed the Pre-Sentence Investigation Report and addendum and discussed them with your client?

MR. McCABE:  I have, Your Honor.

THE COURT:  Are there any errors in the Pre-Sentence Report or addendum that you've not previously called to the Court's attention?

MR. McCABE:  No.

THE COURT:  Mr. Coyne, have you reviewed the Pre-Sentence Investigation Report, addendum thereto and other matters and discussed them with your attorney?  You are muted, sir.

THE DEFENDANT:  Yes.

THE COURT:  Thank you.

Mr. McCabe, is there any legal cause why sentence should not be pronounced?

MR. McCABE:  No, Your Honor.

THE COURT:  Anything else you would like to say or the defendant would like to say, now is the appropriate time bearing in mind that there's an agreed-to sentence.

MR. McCABE:  No, Your Honor, I have nothing else to say other than once sentence is imposed, I would ask that he be permitted to self-report.

I mean, obviously he can't be taken into custody today, but he has no criminal history points and has been completely compliant with supervised release since he was charged and through his plea and now awaiting sentencing.  So I would request, Your Honor, that he be permitted to self-report.

THE COURT:  On behalf of the government, any objection to that request?

MR. LUSTY:  No, Your Honor.

THE COURT:  Mr. Coyne, anything you would like to

say?

THE DEFENDANT:  I just hope things get better. That's all.

THE COURT:  Okay.  Well, Mr. Coyne, if it's any comfort to you, you have an agreed-to sentence, but the Bureau of Prisons is very good in proper placement.  So I believe you would certainly get a place somewhere where you can get continued proper care.

The federal system obviously has much better resources to give you the help you need than any state facility.

So we appreciate your statement in that regard and we'll make -- the Probation Office will work to get your proper medical information and documentation to the Bureau of Prisons so you get properly classified and put into a medical facility that will address any needs that you have in that regard.

Sir, are you satisfied with the service and representation provided by your attorney?

THE DEFENDANT:  Yes.

THE COURT:  Has he done everything you've asked him to do?

THE DEFENDANT:  Yes.

THE COURT:  Did he do anything you believe he should not have done?

THE DEFENDANT:  No.

THE COURT:  On behalf of the government, anything else you would like to say, sir?

MR. LUSTY:  No, Your Honor.

MR. McCABE:  Your Honor, if I may, if I may interrupt, Your Honor, Mr. Coyne had provided me with a list of family and friends, some of whom are on the line now who wanted to speak on his behalf, but I'm not sure that's necessary, Your Honor, but they're available if the Court is interested in hearing from them.  But I'll leave it to up to you.

THE COURT:  I'm happy to hear from anybody who wants to speak, but we do, as I said in the beginning, have an agreed-to sentence, but I do appreciate you all being here and providing him with support, and as you can see, he has a very competent attorney, and I think we're all working in the defendant's best interests, and, as you'll hear in a few moments, his sentence that is agreed to is actually less than the advisory guideline sentence.  So that's also in his favor.

The sentencing guidelines range are advisory only. The Court has discretion to deviate or vary from the guidelines after considering the factors set forth in Title 18, United States Code, Section 3553(a).

The Court must rule on any motions for departure or variance.  The parties agree that there's no motion for

departure or request for variance in this case in light of the
11(c)(1)(C) sentence.

        Mr. McCabe, do you agree?

        MR. McCABE:  I agree, Your Honor.

        THE COURT:  Mr. Lusty, on behalf of the government?

        MR. LUSTY:  Yes, Your Honor, I agree.

        THE COURT:  Do the parties agree that the defendant's
offense level is an 18, criminal history category is I, the
advisory guideline range is 27 to 33 months imprisonment, the
defendant is ineligible for probation, supervised release of
1 to 3 years, a fine of $10,000 to $100,000, and a special
assessment of $100?

        On behalf of the government, did I accurately state
the defendant's offense level, criminal history category and
advisory guideline range?

        MR. LUSTY:  Yes, Your Honor.

        THE COURT:  Mr. McCabe, do you agree?

        MR. McCABE:  I agree, Your Honor.

        THE COURT:  Mr. Coyne, do you understand?

        THE DEFENDANT:  Yes.

        THE COURT:  Okay.  And you understand the sentence
that's been agreed to between your counsel and you and the
government is less than the 27 to 33 months imprisonment
according to the guidelines?

        THE DEFENDANT:  Yes.

THE COURT:  Sir, pursuant to the Sentencing Reform
Act of 1984, it is the judgment of the Court that the
defendant be sentenced to 18 months imprisonment to run
concurrently with any sentence to be imposed at the Allegheny
County Court of Common Pleas, Case No. CP-02-CR-0008195-2020,
agreed to by the parties in the plea agreement which agreement
the Court has accepted.

The defendant's term of imprisonment is be followed
by 3 years of supervised release as agreed to by the parties
in the plea agreement, again, which agreement has been
accepted by this Court.

Sir, within 72 hours of release from the Bureau of
Prisons, the defendant shall report in person to the Probation
Office in the district in which the defendant is released to
be placed on supervised release.

While you are on supervised release, sir, you shall
not commit another federal, state or local crime.  You shall
comply with the standard conditions adopted by this Court and
shall comply with the additional conditions:

One, the defendant shall not illegally possess a
controlled substance.  Supervised release must be revoked for
possession of a controlled substance.

Two, the defendant shall not possess a firearm,
ammunition, destructive device or any other dangerous weapon.
Supervised release must be revoked for possession of a

firearm, ammunition, destructive device or any other dangerous weapon.

Three, the defendant shall submit his person, property, house, residence, vehicle, papers, business or place of employment to a search conducted by the United States probation officer at a reasonable time in a reasonable manner based upon a reasonable suspicion of contraband or evidence of a violation of a condition of supervision. The failure to submit to a search may be grounds for revocation.

The defendant shall inform any other residents that the premises may be subject to searches pursuant to this condition.

Four, the defendant shall participate in a mental health assessment and/or treatment program approved by the probation officer until such time as the defendant is released from the program by the Court.

The defendant shall be required to contribute to the costs of the services for any such treatment in an amount to be determined by the probation officer. These costs shall not exceed the actual costs of the service.

The Probation Office is authorized to release defendant's Pre-Sentence Investigation Report to any treatment provider if so requested.

Five, the defendant shall cooperate in the collection of DNA as directed by the probation officer. Periodic drug

testing mandated by the Violent Crime Control and Law
Enforcement Act of 1994 is hereby waived.  The Court finds
that this offense is not drug related and the defendant has no
current or past history of substance abuse.

The Court also imposes a mandatory special assessment
of $100, constituting a $100 special assessment at each count
to which the defendant has pled guilty which shall be paid to
the Clerk of Court forthwith.

Based upon the financial information contained in the
Pre-Sentence Investigation Report, the Court finds the
defendant does not have the ability to pay a fine and,
therefore, waives any imposition of any fine.

Sir, the reason for your sentence is as follows:

The Court considers the sentence of 18 months
imprisonment to run concurrent with any sentence to be imposed
at the Court of Common Pleas case CP-02-CR-0008195-2020, and
3 years supervised release to be sufficient, but not greater
than necessary to comply with the goals of sentencing, as set
forth in Title 18, United States Code, Section 3553(a)(2),
which are to reflect the seriousness of the offense, note
respect for the law and to provide just punishment for the
offense, to afford adequate deterrence to criminal conduct, to
protect the public from further crimes by this defendant and
to provide the defendant with needed education or vocational
training, medical care or other correctional treatment in the

most effective manner.

The Court has considered all of the sentencing factors set forth in Title 18, United States Code, Section 3553(a), including those presented by the government and defense and as set forth in the Pre-Sentence Investigation Report and addendum.

Furthermore, the Court has considered the following: First, the Court has considered the nature and circumstance of the offense. The defendant has pled guilty to obstruction of law enforcement during civil disorder, in violation of Title 18, United States Code, Sections 231(a)(3) and (2) for his engaging in serious criminal conduct.

This serious criminal conduct is addressed in paragraphs 11 through 16 of the Pre-Sentence Investigation Report, and the Court incorporates by reference these paragraphs as part of the Court's basis for this sentence.

By way of summary only, on May 30th, 2022, during a protest that turned into a civil disorder, the defendant cracked the front windshield of a police vehicle when he threw a rock at it. The defendant then threw a rock through the rear windshield and shattered the vehicle. He then proceeded to strike the rear taillight of an unmarked police car. That vehicle was then ignited and completely engulfed in flames.

The crowd continued into the downtown where uniform police officers attempted to control the rioters. The

defendant was caught on video throwing numerous items that struck police officers, including rocks, bricks, pieces of concrete and a tear gas canister.  The tear gas canister struck a police officer in the hand causing the thumb to bleed and swell.  At the time the defendant threw these objects, he was wearing distinctive red goggles that covered his face.

Officers found additional video in which his face was not covered and he was, thus, identified.  The video of the defendant was clear and that he could be identified on the video.

The purpose of the defendant's throwing the object was to obstruct, impede or interfere with uniform police, Pittsburgh police officers lawfully engaged in the performance of their official duties incident to and during the commission of the civil disorder.

Second, the Court has considered the defendant's criminal, family and social history and personal characteristics, as further outlined in the Pre-Sentence Investigation Report at paragraphs 32 through 63, which this Court incorporates as part of the basis for a sentence.

The defendant is approximately 27 years old.  He's unmarried and has no children.  He has a high school degree and a certificate in information technology.  He's been working at a local restaurant since February of 2022.

The defendant has one prior conviction for disorderly

conduct.  The defendant is in good physical health, but as indicated earlier, suffers from mental health issues for which he's currently seeking treatment.

The Court encourages the defendant to continue to seek out mental health assessment and treatment while incarcerated and the Court has made such as a condition of defendant's supervised release.

Third, the Court has also considered the kinds of sentences available for this offense and the sentencing guideline range under the advisory guidelines and applicable policy statements of the Sentencing Commission.

As I mentioned to you, the sentence is below the recommended guideline range and has been agreed to by the defendant, his counsel and the government.

Fourth, the Court has considered the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; specifically other individuals who have been convicted in Federal Court of committing crimes during the May 30th, 2020 civil disorder that occurred in Pittsburgh.

The Court has worked hard with the seven different defendants for which I have responsibility to have their sentences to be proportionate to their conduct and also consistent with the other sentences that I've imposed in this case.

On behalf of the government, does my statement of reasons adequately address all objections, concerns and issues raised?

MR. LUSTY:  Yes, Your Honor.

THE COURT:  Are there any other sentencing factors under Section 3553(a) that the Court has failed to address?

MR. LUSTY:  No, Your Honor.

THE COURT:  Mr. McCabe, does my statement of reasons adequately address all objections, concerns and issues raised?

MR. McCABE:  Yes, Your Honor.

THE COURT:  Are there any other sentencing factors under Section 3553(a) that the Court has failed to address?

MR. McCABE:  No, sir.

THE COURT:  Now, Mr. McCabe, do you have any recommendations relating to location of where Mr. Coyne should be imprisoned?

MR. McCABE:  Your Honor, for the sake of him and his family, we, of course, would like to have him incarcerated at a facility as close to Pittsburgh as possible.

THE COURT:  Any objection on behalf of the government?

MR. LUSTY:  No, Your Honor.

THE COURT:  I'll make a recommendation to the Bureau of Prisons that the defendant be incarcerated as close as possible to the Western District of Pennsylvania consistent

with his classification.

Now, what about mental health treatment during the time he's incarcerated?  What can we do to help the defendant continue to receive proper evaluation and treatment?

MR. McCABE:  Your Honor, my understanding is once he arrives at an FCI, he would be evaluated by the medical staff, and, of course, that information will be disclosed to Mr. Coyne.

So I have gathered some medical records, some mental health medical records which I think adequately describe his past history, what's happened to him currently, his medications, his diagnosis, and hopefully then the medical staff can review those documents and then give him the appropriate treatment.  Of course, in classification, I hope that that is taken into consideration as well.

THE COURT:  My second recommendation is that the defendant be -- receive a mental health evaluation and that the Bureau of Prisons develop an appropriate treatment plan for him during the period of his incarceration.

Any other requests, recommendations that I should make to the Bureau of Prisons, Mr. McCabe?

MR. McCABE:  Your Honor, one of Mr. Coyne's vocations has been his work in carpentry.  So if there are any vocational programs available to him in the area of carpentry, that would be helpful as well.

THE COURT:  Mr. Coyne, is that something that you would like me to recommend?

THE DEFENDANT:  Yes, carpentry or welding or any kind of machine area work.

THE COURT:  Okay.  I'll recommend to the Bureau of Prisons that the defendant be considered for vocational training in particular for carpentry or welding.

Mr. Coyne, my father was a carpenter his whole life and it's certainly honorable and satisfying work.  I compliment you in seeking to go down that road, and if it turns out to be welding, my understanding is there's 80,000 unfilled welding jobs in the country.  So I think that's another good choice on your behalf.  So I compliment you for both of those fields of possible endeavor.

Sir, I'm going to speak about your right to appeal now.  Further, except as otherwise waived in the plea agreement, you have the right to appeal from the orders of this Court, judgment of guilty and/or from the sentence imposed.

You have the right to have an attorney represent you on any appeal at no cost to you.  If you cannot afford the certified copies of the necessary records or transcripts, they will be furnished at the expense of the United States Government.

If you appeal, the Notice of Appeal must be filed

within 14 days of today.  Otherwise, you lose your right to appeal.  If you request, the Clerk of Court will immediately prepare and file a Notice of Appeal on your behalf.

Have you had an opportunity to talk to your counsel about whether to appeal or not?

THE DEFENDANT:  Yes.

THE COURT:  Do you wish to appeal?

THE DEFENDANT:  No.

THE COURT:  Do you understand if you change your mind and decide to appeal, you must file any Notice of Appeal within 14 days of today; otherwise, you would lose your right to appeal?

THE DEFENDANT:  Yes.

THE COURT:  And if you change your mind and decide to appeal, you use your current counsel for any appeal; correct?

THE DEFENDANT:  Yes.

THE COURT:  The parties have agreed that the defendant should voluntarily surrender.  Thus, pursuant to Title 18, United States Code, Section 3143(a) and 3145(c), the Court finds by clear and convincing evidence that the defendant is not a flight risk based upon his ties to the community, because of his lack of violent criminal history, he's not a danger to any other person or the community and that there are exceptional circumstances and, therefore, orders that the defendant shall voluntarily surrender to the

institution designated by the Bureau of Prisons as notified by
the United States Marshal Service but no later than the 10th
day of March, 2023.

Up to and including that time, the defendant shall
remain subject to all of the conditions previously set by the
United States Magistrate Judge Eddy as part of his pretrial
release.

It is further ordered that the existing order for
release remains in effect subject to the standard conditions
of pretrial release as set forth in the order setting
conditions of release and the following additional conditions:

One, if the defendant has a passport, within 10 days
defendant shall surrender said passport as directed by the
Probation Office, which shall hold said passport until his
term of supervised release is complete.

Sir, are you currently living in West Virginia?

THE DEFENDANT:  Yes.

THE COURT:  But you get your mental health treatment
in Pennsylvania, correct?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  The second condition is
defendant's travel is restricted to the northern district of
West Virginia, other than to travel to the Western District of
Pennsylvania to meet with his attorney, to attend court
hearings, to work or for medical treatment or appointments.

Three, the defendant shall refrain from possessing a firearm, ammunition, destructive device or any other dangerous weapon.

Four, the defendant shall refrain from the excess use of alcohol.

Five, the defendant shall refrain from the use or unlawful possession of a narcotic drug unless prescribed by a licensed medical practitioner.

Six, the defendant shall submit to any method of testing required by the pretrial service office to determine if the defendant is using a prohibited substance.  The defendant shall participate in a program of inpatient or outpatient substance abuse therapy and counseling if deemed advisable by the pretrial service office.

The defendant shall refrain from obstructing in any fashion the efficiency and accuracy of any prohibited substance testing, and defendant shall not obtain or use any third-party device or devices for the use of third-party urine specimens in such testing.

Seven, the defendant shall report as soon as possible to pretrial services any contact with any law enforcement personnel, including, but not limited to, any arrests, questioning or traffic stop.  Understand, sir?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand --

THE DEFENDANT:  Someone has to mute their mic.

THE COURT:  Do you understand that you must report as notified by the United States Marshal Service but no later than the 10th day of March of 2023 or you will be guilty of violating the Bail Reform Act, which requires a maximum ten years of imprisonment consecutive to any sentence I've imposed today, a fine of $250,000, plus interest and could result in a forfeiture of any bond posted.  Understand?

THE DEFENDANT:  Yes.

THE COURT:  On behalf of the government, anything else today?

MR. LUSTY:  No, Your Honor.  Thank you.

THE COURT:  Mr. McCabe, anything else?

MR. McCABE:  Nothing, Your Honor.  Thank you.

THE COURT:  Mr. Coyne, are you satisfied with conducting this sentencing by video?

THE DEFENDANT:  Yes.

THE COURT:  We all wish you well, sir.  And I've done what I can to make the recommendations that you want and I encourage you to take advantage of any programs that are available to you while you are incarcerated and when you come out to be a productive citizen.

I thank you for working with me throughout the change of plea and this sentencing today.  I wish you well, sir.

THE DEFENDANT:  Thanks.

            THE COURT:  I adjourn this hearing.

        (The hearing concluded).

                        C E R T I F I C A T E

        I, VERONICA R. TRETTEL, RMR, CRR, certify that
the foregoing is a correct transcript from the record of
proceedings in the above-entitled case.


 \s\ Veronica R. Trettel             04/14/2023_____
VERONICA R. TRETTEL, RMR, CRR        Date of Certification
Official Court Reporter